**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| MARC KADISH,<br><br>        Plaintiff,<br><br>  v.<br><br> JOHN SAIA,<br><br>        Defendant. | Case No.<br><br>**COMPLAINT AND JURY DEMAND** |

The plaintiff, Marc Kadish, brings this lawsuit against the defendant, John Saia, for conversion, arising from a series of thefts perpetrated by Mr. Saia at Mr. Kadish's home.  Mr. Saia stole at least hundreds of thousands of dollars in cash from Mr. Kadish, who now seeks recovery of those amounts, among other damages, through this suit.

### Jurisdiction and Venue

1.     This Court has jurisdiction under 28 U.S.C. § 1332, because the amount in controversy exceeds $75,000, and Mr. Kadish and Mr. Saia are citizens of different states.

2.     Venue is proper in this district under 28 U.S.C. § 1391 because all or a substantial part of the events giving rise to the claims alleged herein took place in the District of Massachusetts.

3.     The Court has personal jurisdiction over Mr. Saia because he resides in the District of Massachusetts and the acts and transactions giving rise to this action occurred in this District.

## Parties

4.      The plaintiff Marc Kadish is a Florida resident, domiciled at 4779 Collins Avenue, Unit #3005, Miami Beach, Florida.

5.      The defendant John Saia is a Massachusetts resident, domiciled at 14 Gay Avenue, Walpole, Massachusetts.

## Factual Allegations

6.      From 2000 to 2018, Mr. Kadish lived at a home in Newton, Massachusetts.

7.      In that home, Mr. Kadish had a safe and a trunk, in which he would secure cash and other valuables.

8.      Mr. Kadish used his safe and trunk to store longtime savings, casino winnings, cash generated from his businesses, and other money or valuables.

9.      At the time, Mr. Kadish lived with a longtime friend, Ms. Brett Aronne. Mr. Kadish paid for and owned the home in which he and Ms. Aronne lived.

10.      Ms. Aronne was acquainted with the defendant, Mr. Saia, because both worked (and continue to work) for the same employer.

11.      In the mid-2010s, Mr. Kadish took frequent trips to Florida.

12.      During these trips, Ms. Aronne invited Mr. Saia over to Mr. Kadish's home without Mr. Kadish's knowledge, and allowed Mr. Saia access to Mr. Kadish's belongings.

13.      During some of these visits to Mr. Kadish's home, Mr. Saia gained access to Mr. Kadish's safe and trunk.

2

14.    Mr. Saia looked through items in Mr. Kadish's home and discovered the combination to Mr. Kadish's safe.

15.    During his visits to Mr. Kadish's home, Mr. Saia took cash from Mr. Kadish's safe and trunk, even though he had no right to any of that money.

16.    Mr. Saia has boasted to a third-party that his first theft from Mr. Kadish's trunk was $50,000.

17.    Upon information and belief, over time, Mr. Saia stole at least $100,000 in cash from Mr. Kadish's trunk.

18.    Mr. Saia explained to this same third-party that he also stole money from Mr. Kadish's safe.

19.    He concealed these thefts by taking money from the front of the safe and then replacing it with money from the back of the safe so that the thefts would not be readily noticed.

20.    For instance, Mr. Kadish recorded that he had approximately $288,000 in cash in his safe as of February 15, 2015.  Two weeks later, however, he only had approximately $150,000 in his safe, despite not taking or moving any money himself.

21.    Upon information and belief, Mr. Saia stole that money, approximately $138,000, from Mr. Kadish.

22.    Mr. Saia bragged to the third-party that the largest amount he stole from Mr. Kadish at any one time was $200,000.

23.    Mr. Saia has boasted to the third-party that he stole $1 to $1.5 million from Mr. Kadish over a two- to two-and-a-half-year period.  Mr. Saia stole so much

3

money that he told the third-party that he referred to Mr. Kadish's home as the "Bank of Kadish."

24.    Mr. Saia used this stolen money for his own personal benefit.  He used the stolen money to help with a down payment on a home; to pay bills; and to buy motorcycles, vehicles, drugs, drug paraphernalia, jewelry, and other items.  The third-party observed many of these assets at Mr. Saia's home.

25.    Mr. Kadish was harmed not only by the loss of his money, but also suffered lost investment proceeds, emotional distress, and out-of-pocket expenses to secure his home and personal property.

26.    Mr. Kadish was aware in the mid-2010s that some money had been stolen, but did not know, at that time, the extent of the theft.

27.    On March 1, 2015, after Mr. Kadish learned about the large theft in February 2015, he called the police, but he did not know the identity of the perpetrator or the total amount stolen.

28.    Mr. Kadish did not learn the identity of the thief, or the extent of the amount stolen, until February 2026.

29.    In February 2026, Mr. Kadish was contacted by the third-party, to whom Mr. Saia had boasted about stealing from Mr. Kadish, how he conducted these thefts, and who was involved.  The third-party relayed this information to Mr. Kadish, and it was only at that point that Mr. Kadish became aware of the identity of the thief and the amount that Mr. Saia claimed to have stolen.

30.     After relaying the facts to Mr. Kadish, the third-party spoke again to Mr. Saia.  Mr. Saia repeated his statements to the third-party regarding the thefts.

## Count I

### Conversion

31.     Mr. Kadish realleges and incorporates by reference the allegations contained in all preceding paragraphs.

32.     Mr. Kadish had actual possession of his personal property (the cash he stored within his home).

33.     Mr. Saia intentionally and wrongfully exercised acts of ownership, control, or dominion over Mr. Kadish's personal property (the cash Mr. Kadish stored within his home).

34.     Mr. Saia had no right of possession to Mr. Kadish's personal property (the cash Mr. Kadish stored within his home).

35.     Mr. Saia's intentional and wrongful exercise of ownership, control, or dominion over Mr. Kadish's personal property (the cash he stored within his home) has harmed Mr. Kadish, including but not limited to the value of the money stolen, the lost investment proceeds from that money, emotional distress, and out-of-pocket expenses.

### REQUEST FOR RELIEF

**WHEREFORE**, Mr. Kadish respectfully requests that this Court:

1)     Enter a judgment that Mr. Saia is liable to Mr. Kadish for conversion;

2)    Award Mr. Kadish compensatory damages and the costs of this action,

including reasonable attorney fees; and

3)    Grant any other relief this Court finds just and proper.

## **JURY DEMAND**

Mr. Kadish demands a trial by jury.

May 29, 2026                           Respectfully submitted,

*/s/ David S. Mackey*

David S. Mackey, BBO #542277
dmackey@andersonkreiger.com
Sean M. Grammel, BBO #688388
sgrammel@andersonkreiger.com
ANDERSON & KREIGER LLP
50 Milk, 21st Floor
Boston, MA 02109
Telephone: 617-621-6523
Fax: 617-621-6623

6